**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
FIRST MERCURY INSURANCE
COMPANY,

                                        Plaintiff,                          **REPORT AND**
                                                                            **RECOMMENDATION**

                        - against -                                         CV 17-1763 (SJF) (AKT)

LAW OFFICE OF KENNETH B. SCHWARTZ,
KENNETH B. SCHWARTZ, P.C.,
KENNETH B. SCHWARTZ, and HELENE
STETCH,

                                        Defendants.
----------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.   <u>**PRELIMINARY STATEMENT**</u>

         Plaintiff First Mercury Insurance Company ("Plaintiff") brings this insurance coverage

action against Defendants the Law Office of Kenneth B. Schwartz, Kenneth B. Schwartz, P.C.,

Kenneth B. Schwartz ("Schwartz"), (collectively, the "Schwartz Defendants"), and Helene

Stetch ("Stetch") (collectively, "Defendants"). *See generally* Plaintiff's Complaint ("Compl.")

[DE 1]. In seeking a declaratory judgment, Plaintiff asserts that it has been relieved of its duty to

defend and indemnify Defendants in three underlying civil actions pursuant to several provisions

of a professional liability insurance policy ("the Policy"). *See id.* Plaintiff has moved for

summary judgment on this basis. *See generally* Plaintiff's Memorandum in Support of its

Motion ("Pl.'s Mem.") [DE 38-2]; Plaintiff's Memorandum in Opposition to Defendants' Cross-

Motion for Summary Judgment and Reply in Further Support if its Motion for Summary

Judgment ("Pl.'s Opp'n. & Reply") [DE 38-28].  The Schwartz Defendants[1] have asserted counterclaims, including one for breach of contract, and they seek a declaratory judgment obligating Plaintiff to defend and indemnify them under the Policy.  *See* Schwartz Defendants' Answer and Counterclaim ("Counterclaim") [DE 17].  In addition, the Schwartz Defendants have cross-moved for summary judgment.  *See generally* the Schwartz Defendant's Memorandum in Opposition to Plaintiff's Motion, and in Support of their Motion for Summary Judgment ("Defs.' Mem. & Opp'n.") [DE 38-23].

Judge Feuerstein has referred both motions for summary judgment to this Court for a Report and Recommendation as to which of the motions, if either, should be granted.  *See* Electronic Order dated May 15, 2018.  For the reasons set forth below, the Court respectfully recommends to Judge Feuerstein that Plaintiff's motion for summary judgment be GRANTED, in part, and DENIED, in part, and the Schwartz Defendants' motion for summary judgment similarly be GRANTED, in part, and DENIED, in part.

## II.    BACKGROUND

### A.    The Material Facts

The following facts are drawn from the parties' Rule 56.1 statements as well as the underlying record and are undisputed unless otherwise noted.

#### 1.    *The Professional Liability Insurance Policy*

Plaintiff issued a "Lawyers Professional Liability Insurance" Policy, No. FMLP002932, to "Kenneth B. Schwartz, Attorney At Law," with effective dates of October 1, 2009 to October 1, 2010, and a retroactive date of October 1, 2001.  Declarations of Lawyers

---

[1]    Defendant Stetch has not answered the Complaint.  Plaintiff has filed a motion for default judgment against her which remains pending before Judge Feuerstein.  *See* DE 33.

Professional Liability Insurance Policy No. FMLP002932 (cited as "FMLP002932"), attached as Exhibit H to the Declaration of Rebecca A. Du Boff, Esq., in Support of Plaintiff's Motion for Summary Judgment ("Du Boff Decl.") [DE 38-12]; Schwartz Defendants' Rule 56.1(a) Statement of Material Fact ("Defs.' SOMF") [DE 38-26] ¶ 1; Plaintiff's Rule 56.1(b) Response to the Schwartz Defendants' Statement of Material Fact ("Pl.'s 56.1(b) Response") [DE 38-29] ¶ 1. The Policy establishes Plaintiff's duty to defend Schwartz against claims "arising out of [Schwartz's] profession as a Lawyer, or as a Lawyer acting in the capacity of an Arbitrator, Mediator, Neutral, Title Insurance Agent, Notary Public, member, director, officer of any Bar Association . . . or similar professional board or committee relating to the practice of law." FMLP002932 at 1; Plaintiff's Rule 56.1(a) Statement of Material Fact ("Pl.'s SOMF") [DE 38-3] ¶ 28; Schwartz Defendants' Rule 56.1(b) Response to Plaintiff's Statement of Material Fact ("Defs.' 56.1(b) Response") [DE 38-25] ¶ 28. The Policy provides coverage for Schwartz's "Wrongful Acts," which are defined as "any actual or alleged: A. act; B. error; C. omissions; D. misstatement; E. misleading statements; F. neglect or breach of duty; or G. personal injury." FMLP002932 at 3; Pl.'s SOMF ¶ 28; Defs.' 56.1(b) Response ¶ 28. Under the terms of the Policy, liability is limited to $2,000,000.00 per claim and $2,000,000.00 annually in the aggregate, in excess of a $5,000.00 deductible per claim and in the aggregate. Declarations of FMLP002932; Pl.'s SOMF ¶ 27; Defs.' SOMF ¶ 3.

The Policy contains thirteen itemized "exclusions" which identify categories of claims not covered by the Policy. *See* FMLP002932 at 4-5. Of significance to this case are the following two exclusions:

> I.    any CLAIM that results in any final judgment or final adjudication against any INSURED based upon or arising out of any criminal, dishonest, fraudulent or malicious

WRONGFUL ACT.  This exclusion does not apply to any INSURED who is not so adjudged;

*     *     *

XI.   any CLAIM arising out of conversion, misappropriation or improper commingling of client funds[.]

*Id*. at 4; Pl.'s SOMF ¶ 28; Defs.' 56.1(b) Response ¶ 28.

Also relevant to this action, the Policy lists several "duties precedent to coverage," one of which states that "[n]o insured shall, without prior written consent of [Plaintiff], make any payment, admit liability, settle any claim, assume any obligation, agree to arbitration or any similar means of resolution of any dispute, waive any rights or incur any claims expenses on behalf of [Plaintiff]."  FMLP002932 at 6.

### 2.   *The Underlying Civil Actions*

### a.   **The Dos Ramos Action**

On or about January 27, 2012, Gonsalves Dos Ramos ("Dos Ramos") filed a Verified Complaint in the New York Supreme Court, Queens County, asserting ten causes of action against Schwartz, Stetch, and three other defendants ("the Dos Ramos Action").  *See generally* Dos Ramos Verified Complaint,[2] attached as Exhibit A to the Du Boff Decl. [DE 38-5]; Pl.'s SOMF ¶ 1; Defs.' 56.1(b) Response ¶ 1.  In the Verified Complaint, Dos Ramos alleges that in or around January 2009, he obtained a mortgage from Metlife Bank in the amount of $439,560.00 to finance the purchase of a short sale property.  Pl.'s SOMF ¶ 2; Defs.' 56.1(b) Response ¶ 2.   Metlife provided Schwartz as the closing attorney.  Pl.'s SOMF ¶ 3; Defs.'

---

[2]   The Dos Ramos Verified Complaint is submitted as an exhibit by both parties.  While the pages are numbered chronologically from 1 through 17, in both copies of the Verified Complaint, the paragraph numbers in the first several pages are out of order.  Also, page number 4 ends with paragraph 6 and page number 5 begins in the middle of paragraph 22, with the first listed cause of action omitted somewhere in the missing paragraphs.

56.1(b) Response ¶ 3.  According to Dos Ramos, up to and at the closing on January 15, 2009, "Defendant Kenneth Schwartz represented to Plaintiff that the funds from the Meflife mortgage would be used to satisfy" an existing mortgage on the property.  Dos Ramos Verified Complaint ¶ 38. Dos Ramos alleges that "[a]t that time, Schwartz knew that [this] representation was false. Schwartz made the representation with the intent that it would induce Plaintiff to purchase the subject property at short sale." *Id*. ¶¶ 39-40; Pl.'s SOMF ¶¶ 5-6; Defs.' 56.1(b) Response ¶¶ 5-6. According to the Verified Complaint, despite Schwartz taking possession of the funds secured by the Metlife mortgage, the existing mortgage was not satisfied.  Dos Ramos Verified Complaint ¶¶ 61, 64.  Dos Ramos alleges that Schwartz's representation that the existing mortgage would be satisfied was a "fraudulent representation" upon which he relied.  *Id*. ¶¶ 45, 51.  He claims that "Schwartz's misconduct amounts to conversion and misappropriation of Plaintiff's assets and property," and alleges that this "misconduct was committed by [Schwartz] with malice." *Id*. ¶¶ 65, 67.  Pl.'s SOMF ¶¶ 7-8; Defs.' 56.1(b) Response ¶¶ 7-8.  The Verified Complaint asserts causes of action against Schwartz for fraudulent inducement as well as conversion and misappropriation.[3] *See generally* Dos Ramos Verified Complaint; Pl.'s SOMF ¶ 9; Defs.' 56.1(b) Response ¶ 9.

---

[3]   The Schwartz Defendants state that the claims in each of the three underlying actions "arose from wrongdoing committed by Helene Stetch, and named Schwartz a defendant by virtue of his alleged failure to adequately supervise the transactions. . . . [T]he purchasers and sellers of the distressed properties had all of their communications with Helene Stetch, and never spoke to, met with, or otherwise communicated with Schwartz."  Defs.' SOMF ¶ 10.  To support this assertion, the Schwartz Defendants cite the Complaint in the instant action, the Dos Ramos Verified Complaint, the Persaud Complaint, and a Queens County District Attorney investigator's memorandum; however, they cite no particular portion of any of these documents. *See id*.  Plaintiff disputes these assertions, stating that the underlying actions "each contain direct allegations and causes of action against Kenneth Schwartz for his own intentional acts of fraud, conversion and misappropriation of client funds, and do not name Schwartz a defendant simply by virtue of his alleged failure to adequately supervise Helene Stetch."  Pl.'s 56.1(b) Response ¶ 10.

By letter dated February 15, 2012, Plaintiff agreed to defend Schwartz in the Dos Ramos Action, subject to a reservation of rights to later disclaim coverage upon, among other things, a determination that Schwartz had acted in any criminal, dishonest, or fraudulent manner, or if the claims in the Dos Ramos Action arose out of conversion or misappropriation of client funds.[4] Pl.'s SOMF ¶ 10; Defs.' 56.1(b) Response ¶ 10.

### b.   The Johnson Action

On or about March 27, 2013, Mathew Johnson ("Johnson") filed a Verified Complaint in the New York Supreme Court, Bronx County, asserting six causes of action against Schwartz, the Law Office of Kenneth B. Schwartz, Stetch, and seven other defendants ("the Johnson Action"). *See generally* Johnson Verified Complaint, attached as Exhibit C to the Du Boff Decl. [DE 38-7]; Pl.'s SOMF ¶ 12; Defs.' 56.1(b) Response ¶ 12. On or about January 27, 2017, Johnson filed an Amended Verified Complaint asserting six causes of action against Schwartz, the Law Office of Kenneth B. Schwartz, Stetch, and two additional defendants, which is now the operative pleading in the Johnson Action. *See generally* Johnson Amended Verified Complaint, attached as Exhibit D to the Du Boff Decl. [DE 38-8]; Pl.'s SOMF ¶ 13; Defs.' 56.1(b) Response ¶ 13.

In his Amended Verified Complaint, Johnson alleges that on September 24, 2007, he contracted with and hired Schwartz and the Law Office of Kenneth B. Schwartz to represent his interests in purchasing certain property in the Bronx. Johnson Amended Verified Complaint ¶ 2; Pl.'s SOMF ¶ 14; Defs.' 56.1(b) Response ¶ 14. According to Johnson, Schwartz assigned

---

[4] Plaintiff states, and the Schwartz Defendants agree, that the Dos Ramos Action is stayed pending the outcome of Schwartz's criminal proceeding. However, no citation to the record in support of this statement is provided.

Stetch, "allegedly an attorney, to work with the Plaintiff as well." Johnson Amended Verified Complaint ¶ 3. Johnson states that although the property did not have a proper Certificate of Occupancy, "[a]ll the defendants represented and encouraged the Plaintiff to close, alleging that 'these types of things', failure to provide a valid certificate of occupancy, are normal problems at closing and Plaintiff could be adequately protected if he did close in spite of this significant and material default." *Id*. ¶ 10. The Amended Verified Complaint goes on to allege that Schwartz and Stetch "breached the contract with Plaintiff by allowing him to purchase the premises for almost one million ($1,000,000.00) dollars, although the Seller defendants were in absolute breach of the sale's [*sic*] contract by not having provided a final certificate of occupancy." *Id*. ¶ 20. Johnson further alleges that Schwartz and Stetch "alleged to 'resolve' some of [the] issues by having a $100,000 escrow, allegedly held by the Selling Defendant'[s] attorneys, released to Plaintiff so that the final certificate of occupancy could be obtained. . . . Allegedly the $100,000 escrow was released to [Schwartz and Stitch] but in spite of due demand [they] have failed, refused and neglected to remit the money to Plaintiff." *Id*. ¶¶ 28, 31. Johnson asserts that "[t]his fraud is akin to a major felony by absconding with the Plaintiff's escrow moneys. These Defendants defrauded the Plaintiff out of the escrow money all to his damages [*sic*] in an amount of $100,000 plus interest." *Id*. ¶ 35.

Although it is less than clear, there is a further allegation that $45,000.00 was to be paid to Johnson to resolve the issue of the certificate of occupancy, which he claims "Defendants knew . . . was inadequate and would not compensate for the work needed." *Id*. ¶¶ 48-49. This money, too, "was paid to Defendant Attorneys but in spite of due demand, Defendant Attorneys refuse to pay the moneys to Plaintiff all to Plaintiff [*sic*] damage in the amount of $45,000.00

plus interest."[5]  *Id.* ¶ 57.  The Amended Verified Complaint asserts causes of action against

Schwartz for breach of contract, fraudulent inducement, breach of the duty of good faith and fair

dealing, and conversion.  *See generally* Johnson Amended Verified Complaint; Pl.'s SOMF ¶ 17;

Defs.' 56.1(b) Response ¶ 17.

By letters dated April 4, 2012 and June 27, 2013, Plaintiff agreed to defend Schwartz in

the Johnson Action, subject to a reservation of rights to later disclaim coverage upon, among

other things, a determination that Schwartz had acted in any criminal, dishonest, or fraudulent

manner, or if the claims arose out of conversion or misappropriation of client funds.[6]  Pl.'s

SOMF ¶ 18; Defs.' 56.1(b) Response ¶ 18.

<b>c.      The Persaud Action</b>

On January 15, 2012, Rajpattie and Kissoon Persaud (collectively, "the Persauds") filed a

Complaint in the New York State Supreme Court, Queens County, asserting eight causes of

action[7] against Schwartz, Kenneth B. Schwartz, P.C., Stech, and six other defendants ("the

Persaud Action").  *See generally* Persaud Complaint, attached as Exhibit F to the Du Boff Decl.

[DE 38-10]; Pl.'s SOMF ¶ 20; Defs.' 56.1(b) Response ¶ 20.  According to the Complaint, the

Persauds retained Stech and Schwartz in May 2009 to represent their interests in connection

with the purchase of property in Jamaica, New York.  Persaud Complaint ¶¶ 33-34; Pl.'s SOMF

---

[5]  There is a dispute over what the Amended Verified Complaint alleges exactly.  *See* Pl.'s SOMF ¶ 15; Defs.' 56.1(b) Response ¶ 15.  For this reason, the Court takes these allegations exclusively from the Amended Verified Complaint itself.

[6]  Plaintiff states, and the Schwartz Defendants agree, that the Johnson Action is stayed pending the outcome of Schwartz's criminal proceeding.  However, no citation to the record in support of this statement is provided.

[7]  The Persaud Complaint lists the sixth cause of action twice.  *See* Persaud Complaint ¶¶ 80, 88.

¶ 21; Defs.' 56.1(b) Response ¶ 21.  The Persauds allege that a contract for the purchase of the property for $390,000.00 was executed under the supervision of Stetch "and/or" Schwartz, and Rajpattie Persaud handed a check to Stetch in the amount of $10,000.00 "made payable to [Schwartz] as a deposit for the purchase of the aforesaid property."  Persaud Complaint ¶¶ 35-36. To purchase the property, Rajpattie Persaud obtained a mortgage loan from Bank of America in the amount of $312,000.00.  *Id.* ¶ 37; Pl.'s SOMF ¶ 22; Defs.' 56.1(b) Response ¶ 22. According to the Complaint, at the closing on December 28, 2009, Rajpattie Persaud signed closing papers and handed a check for $91,400.00 made payable to Schwartz for the remainder of the money owed plus closing costs.  Persaud Complaint ¶¶ 38-40.  The Persauds allege that they believed through purchasing the property, an existing mortgage on the property would be paid off.  *Id.* ¶ 41.  After closing, the Persauds began making improvements to the property and Rajpattie Persaud began making payments on the mortgage loan to Bank of America.  *Id.* ¶¶ 45-46.  However, according to the Complaint, in October 2010, the Persauds received a summons and complaint filed by Deutsche Bank National Trust Company ("Deutsche Bank"), holder of the existing mortgage, and which was directed to the previous owners of the property, alleging that the prior mortgage was not paid off and that Deutsche Bank was seeking to foreclose on the property.  *Id.* ¶¶ 47-48; Pl.'s SOMF ¶ 23; Defs.' 56.1(b) Response ¶ 23.  The Persaud Complaint asserts causes of action against Schwartz for negligent supervision, legal malpractice, fraud, and conversion.  *See generally* Persaud Complaint; Pl.'s SOMF ¶ 24; Defs.' 56.1(b) Response ¶ 24.

By letter dated February 15, 2012, Plaintiff agreed to defend Schwartz in the Persaud Action, subject to a reservation of rights to later disclaim coverage upon, among other things, a determination that Schwartz had acted in any criminal, dishonest, or fraudulent manner, or if the

claims in the Persaud Action arose out of conversion or misappropriation of client funds.[8]  Pl.'s SOMF ¶ 25; Defs.' 56.1(b) Response ¶ 25.

### 3.    *The Criminal Proceedings*

On March 24, 2014, the Queens County District Attorney's Office filed an Indictment against Schwartz in the New York State Supreme Court, Queens County, Criminal Term.[9]  *See generally* Indictment No. 508/2014, attached as Exhibit I to the Du Boff Decl. ("Indictment") [DE 38-13]; Pl.'s SOMF ¶ 29; Defs.' 56.1(b) Response ¶ 29.  The Indictment set forth 19 counts against Schwartz, including criminal possession of stolen property and grand larceny.  *See generally* Indictment; Pl.'s SOMF ¶ 30; Defs.' 56.1(b) Response ¶ 30.  On January 13, 2017, Schwartz pleaded guilty to two charges:  (1) New York Penal Law 115-1, Criminal Facilitation in the Fourth Degree; and (2) New York Penal Law 240.20, Disorderly Conduct.  *See generally* Plea on Indictment 508/2014, attached as Exhibit J to the Du Boff Decl. ("Plea") [DE 38-14]; Pl.'s SOMF ¶ 31; Defs.' 56.1(b) Response ¶ 31.  By pleading guilty to criminal facilitation in the fourth degree, Schwartz admitted that "on or about and between May 1, 2008 and January 31, 2010 . . . believing it probable that [he was] rendering aid to a person who intended to commit a crime[,] engage[d] in conduct which provided such person with the means or opportunity for the

---

[8]  Plaintiff states, and the Schwartz Defendants agree, that the Persaud Action is stayed pending the outcome of Schwartz's criminal proceeding.  However, no citation to the record in support of this statement is provided.

[9]  The Schwartz Defendants state that Schwartz himself alerted authorities to Stetch's wrongdoing by drafting and sending a detailed memorandum to the Queens County District Attorney's Office, the U.S. Attorney, the New York State Attorney General, the FBI, the New York State Banking Department, the New York State Grievance Committee, and other entities. Is is is is *See* Defs.' SOMF ¶ 12.  In response, Plaintiff admits only that the underlying exhibit cited by the Schwartz Defendants is a writing which speaks for itself.  *See* Pl.'s 56.1(b) Response ¶ 12.

commission thereof and which in fact aided such person to commit a felony." Plea at 28; *see* Pl.'s SOMF ¶¶ 32-33; Defs.' 56.1(b) Response ¶¶ 32-33.

Schwartz's sentencing was scheduled for January 2018 and was contingent upon his compliance with certain conditions, including his entering into Affidavits of Confessions of Judgment in the Persaud and Dos Ramos Actions. Plea at 5; Pl.'s SOMF ¶ 35; Defs.' 56.1(b) Response ¶ 35. Additionally, Schwartz was to pay restitution of $12,050 and subject himself to an independent monitor to verify that he was not commingling, converting, or misappropriating clients' funds. Plea at 5. Pursuant to the terms of the Plea, upon satisfying the requisite conditions, Schwartz would be allowed to withdraw his guilty plea to the misdemeanor offense of criminal facilitation in the fourth degree and would be sentenced on the disorderly conduct charge to a period of one year conditional discharge. *Id*. at 6.

The Affidavits of Confessions of Judgment executed by Schwartz state that through Schwartz's "failure to exercise due diligence and by way of [his] negligent conduct, [Schwartz's] employee, Helene Stetch, stole by means of misappropriation, the down payment[s]" made by Gonsalves Dos Ramos and Rajpattie Persaud by not using them "towards paying off the underlying mortgage[s] but instead using [them] to make various other disbursements, including causing [them] to be used by or on behalf of Kenneth B. Schwartz for disbursements for legal fees, when no such disbursements should have been made under the circumstances." Affidavits of Confessions of Judgment, attached as Exhibits K and L, respectively, to the Du Boff. Decl. ("Affidavits") [DE 38-15 and 38-16] ¶ (3)(c); Pl.'s SOMF ¶¶ 36-37; Defs.' 56.1(b) Response ¶¶ 36-37. Schwartz confessed judgment in favor of Rajpattie Persaud for $86,061.00 and in favor of Gonsalves Dos Ramos for $43,000.00, each figure representing Schwartz's civil liability

to the respective plaintiff for the conduct giving rise to the charges in the Indictment. *See* Affidavits ¶¶ (2), (4); Pl.'s SOMF ¶¶ 38-40; Defs.' 56.1(b) Response ¶¶ 38-40.

Schwartz's sentencing occurred on January 29, 2018, at which time the court, pursuant to the plea agreement, vacated Schwartz's plea to criminal facilitation in the fourth degree and sentenced him to "a one year conditional discharge" on the charge of disorderly conduct. Sentence on Indictment 508/2014, attached as Exhibit Q to the Du Boff Decl. ("Sentence") [DE 38-21] at 11-12; Pl.'s SOMF ¶¶ 45-46; Defs.' 56.1(b) Response ¶¶ 45-46.

### 4. *Plaintiff's Coverage Under the Policy*

As noted above, Plaintiff sent letters agreeing to defend Schwartz in the three civil actions commenced against him, subject to a reservation of rights to later disclaim coverage under certain conditions. *See* Pl.'s SOMF ¶¶ 10, 18, 25; Defs.' 56.1(b) Response ¶¶ 10, 18, 25. On November 28, 2016, counsel appointed by Plaintiff to represent Schwartz in the underlying actions issued a memorandum to Plaintiff regarding the civil actions. *See generally* Crum & Forster Memorandum dated November 28, 2016 ("Crum & Forster Mem."), attached as Exhibit H to the Declaration of Lee Bergstein, Esq., in Support of the Schwartz Defendants' Motion for Summary Judgment ("Bergstein Decl.") [DE 38-27]; Defs.' SOMF ¶ 14; Pl.'s 56.1(b) Response ¶ 14. Counsel's memorandum assesses the claims against Schwartz, with respect to the claims against Stetch, and the scope and likelihood of liability against Schwartz in each action.[10] *See generally* Crum & Forster Mem.

---

[10]    The Schwartz Defendants cite language from the memorandum for the purpose of showing that Stetch was the principal wrongdoer and Schwartz's liability was limited to negligence. *See* Defs.' SOMF ¶¶ 14-15. The Court points out that one of the quotations from the memorandum incorrectly attributes language directed to only one of the underlying actions to all three actions. Specifically, the Schwartz Defendants incorrectly aver that the memorandum states as follow: "Ms. Stetch acknowledged at her deposition that, to her knowledge, Mr. Schwartz was not involved in the subject closings." *Id*. ¶ 14. This language only speaks to

On February 16, 2017, Plaintiff amended its initial coverage position and disclaimed coverage to Schwartz for the claims in the three underlying civil actions. *See generally* Letter of Disclamation dated February 16, 2017, attached as Exhibit M to the Du Boff Decl. ("Disclamation"), [DE 38-17]; Pl.'s SOMF ¶ 41; Defs.' 56.1(b) Response ¶ 41. Plaintiff informed Schwartz that it was disclaiming coverage based on (1) the fact that all three of the underlying actions set forth causes of action against him for conversion and contained claims arising out of conversion, misappropriation of funds, and/or improper commingling of client funds, and (2) his admissions in the Affidavits of Confessions of Judgment. *See* Disclamation at 10-11. Plaintiff also informed Schwartz that it intended to file an action against him seeking a declaration that it had no duty to defend or indemnify him and also seeking reimbursement of any defense costs incurred subsequent to the date of Plaintiff's disclamation. Disclamation at 11; Pl.'s SOMF ¶ 41; Defs.' 56.1(b) Response ¶ 41

**B.    Relevant Procedural History**

Plaintiff commenced this action on or about March 30, 2017 with the filing of the Complaint. *See* DE 1. After moving for and receiving several extensions of time to answer or otherwise respond to the Complaint, the Schwartz Defendants filed an Answer and Counterclaim on June 19, 2017, which asserts four causes of action and seeks declaratory relief. *See* DE 17. On May 11, 2017, Plaintiff requested the Clerk of the Court issue a Certificate of Default as to Defendant Helene Stetch, who had not appeared in the action. *See* DE 13. The Certificate was

---

the Persaud action, and accordingly references only one "subject closing." Crum & Forster Mem. Alonzo (in holiday weekend at 2.

issued on March 9, 2018.  *See* DE 28.   Plaintiff filed a motion for default judgment as to Stetch

on April 4, 2018 and that motion remains pending. [11]  *See* DE 33.

On May 14, 2018, the parties filed their fully briefed motions for summary judgment.

*See* DE 38.  Judge Feuerstein referred both motions to this Court on May 15, 2018 for a Report

and Recommendation as to whether the motions should be granted.  *See* Electronic Order dated

May 15, 2018.

### C.    The Parties' Positions

The Court briefly summarizes the arguments of each side before moving to its analysis.

#### 1.    *Plaintiff's Motion for Summary Judgment*

Plaintiff argues it is not obligated to defend or indemnify Schwarz under (1) the clear and

unambiguous terms of the Policy's exclusion for "any claim arising out of conversion,

misappropriation or improper commingling of funds," Pl.'s Mem. at 14-17; and, additionally, (2)

the clear and unambiguous terms of the Policy's exclusion for any claim resulting in any final

judgment "arising out of any criminal, dishonest, fraudulent or malicious wrongful act."  *Id.* at

17-20.  As to the first exclusion,[12] Plaintiff contends "it is undisputed that each of the Underlying

Actions contain claims against Schwartz arising out of conversion, misappropriation or improper

commingling of funds."  *Id*. at 15.  Although Plaintiff states that no New York court has yet

analyzed this exact exclusion, "courts from other jurisdictions have applied similarly worded

---

[11]    A hearing on Plaintiff's motion for default judgment is scheduled before Judge
Feuerstein on March 13, 2019.  *See* Electronic Order dated December 6, 2018.

[12]    Although the Policy lists the exclusion dealing with claims arising from final
judgments based upon criminal, dishonest, fraudulent, or malicious wrongful acts before the
exclusion dealing with claims arising from conversion and misappropriation, the Court refers to
the former exclusion as the "second exclusion" and the latter as the "first exclusion" throughout
this Report and Recommendation since Plaintiff's motion presents the exclusions in this order.

exclusions to preclude coverage in the circumstances presented here." *Id*. at 14-15. As to the second exclusion, Plaintiff attempts to preempt Schwartz's argument by contending that "Schwartz cannot rely on his sentencing for the charge of disorderly conduct to somehow negate the impact of his guilty plea or the application of the exclusion to bar coverage." *Id*. at 19. Having admitted that no New York court has analyzed this exact exclusion, Plaintiff states that "Courts throughout the country have held that guilty pleas are equivalent to convictions by trial and are, therefore, not distinct from a final adjudication on the merits." *Id*. at 17.

In addition to its entitlement to judgment based on the Policy's two exclusions examined above, Plaintiff maintains that "[t]he Schwartz Defendants are not entitled to coverage from [Plaintiff] under the [ ] Policy because they breached a clear and unambiguous condition of the [ ] Policy that 'no insured shall, without prior written consent of [Plaintiff], make any payment, admit liability, settle any claim, assume any obligation, agree to arbitration or any similar means of resolution of any dispute . . . on behalf of [Plaintiff].'" Pl.'s Mem. at 20. Plaintiff points out that (1) "Schwartz admitted liability in his January 2017 guilty plea and in the Affidavits of Confessions of Judgment that he entered into the Dos Ramos Action and the Persaud Action," and (2) he also "voluntarily assumed an obligation to make a payment to the underlying plaintiffs in a collective amount exceeding $100,000." *Id*. at 21. Based on these actions, Plaintiff contends that Schwartz's failure to obtain its written consent to admit liability and assume a financial obligation "absolves [Plaintiff] of any liability for payment under the settlement." *Id*.

### 2. *The Schwartz Defendants' Opposition to Plaintiff's Motion for Summary Judgment and the Schwartz Defendants' Cross-Motion for Summary Judgment*

The Schwartz Defendants argue that, as a general matter, Plaintiff has a duty to defend them because the underlying lawsuits allege, in part, claims of legal malpractice which are

covered under the Policy.  *See* Defs.' Mem. & Opp'n. at 10.  They further contend that "[a]n

insurer may be required to defend under the contract even though it may not be required to pay

once the litigation has run its course," and that "[a]ny doubt as to whether the allegations state a

claim within the coverage of the policy must be resolved in favor of the insured against the

carrier."  *Id*.

With respect to Plaintiff's arguments regarding the first exclusion – precluding coverage

for claims arising out of conversion, misappropriation or improper commingling of client funds –

the Schwartz Defendants claim that the exclusion should not abrogate the duty to defend because

the allegations in the three underlying actions which are directed at Schwartz specifically (as

opposed to Stetch and other defendants) allege negligent hiring and supervision.  *See* Defs.'

Mem. & Opp'n. at 11.  Accordingly, and because exclusions receive strict construction, the

Schwartz Defendants assert that Plaintiff cannot demonstrate that "the allegations of the

complaint[s] cast the pleading[s] *solely and entirely* within the policy exclusion[ ]," and the

exclusion is therefore unenforceable.  Defs.' Mem. & Opp'n. at 12 (emphasis in original).

Addressing Plaintiff's argument regarding the second exclusion – precluding coverage for any

claim resulting in any final judgment arising out of any criminal, dishonest, fraudulent or

malicious wrongful act – the Schwartz Defendants contend that Schwartz's plea agreement is

extrinsic to the underlying actions and should not be part of the analysis in determining

Plaintiff's duty to defend.  *See id*. at 21-22.  However, even considering the plea agreement, the

Schwartz Defendants assert that "a conditional plea does not represent an admission for civil

purposes and will have no collateral estoppel or preclusive effect, since an admission can only

take place once a judgment of conviction is entered.  Pursuant to the terms of Schwartz's

sentencing, a judgment of conviction was entered *solely* as to the *non-criminal* charge of

16

disorderly conduct."  *Id*. at 22 (citation omitted) (emphasis in original).  In addition, the

Schwartz Defendants point out that (1) nowhere in the criminal proceedings or plea agreement is

there evidence that Schwartz knew of Stetch's wrongdoing until it was discovered, and (2) the

the allegations against Schwartz are concerned solely with his failure to properly supervise

Stetch.  *Id*. at 22-23.

Regarding Plaintiff's contention that Schwartz violated a condition precedent by signing

the Affidavits of Confessions of Judgment, the Schwartz Defendants posit that "the confessions

of judgment exist entirely separate from any payment on behalf of [Plaintiff] . . . . In other

words, the confessions of judgment only apply to the extent that insurance does not."  Defs.'

Mem. & Opp'n. at 24.  The argument here appears to be that "the confessions operate not as a

settlement or an offer on behalf of the carrier, but as a safety net for Dos Ramos and Persaud in

the event that they fail to secure a judgment through the underlying lawsuits."  *Id*.  Accordingly,

the confessions of judgment "are specifically *not* intended to constitute payments by the carrier

and neither confession of judgment purports in any way to be made on behalf of [Plaintiff]."  *Id.*

(emphasis in original).

Lastly, the Schwartz Defendants argue that, in the alternative to a declaratory judgment,

the Court should stay the instant action pending resolution of the state court proceedings.  Defs.'

Mem. & Opp'n. at 25-27.  They assert that this Court has the discretion to stay or dismiss

insurance coverage declaratory judgment actions when state court proceedings involving the

same issues are pending.  *Id*. at 25.  According to the Schwartz Defendants, the instant action is

premature because the determination of Plaintiff's duty to indemnify "must be made in the

context of the state court proceedings, which will determine the liability of the parties and, were

[Schwartz] to be found liable, whether the insurance coverage policy issued requires Plaintiff to indemnify [Schwartz]." *Id*. at 26-27.

### 3.    *Plaintiff's Opposition to the Schwartz Defendants' Cross-Motion, and Plaintiff's Reply in further Support of its Motion*[13]

In opposing the cross-motion of the Schwartz Defendants, Plaintiff first addresses their contention that Plaintiff must defend Schwartz because the underlying actions involve claims of negligence and negligent supervision.  According to Plaintiff, "[t]his is simply not true.  None of the complaints filed in the Underlying Actions contain causes of action or allegations against Schwartz for negligence, negligent supervision, or negligent training."  Pl.'s Opp'n. & Reply at 1-2; *see id*. at 6-9, 13-15.  Plaintiff argues that these causes of action fall outside the scope of the Policy accordingly.  *Id*. at 6-9, 13-15.

As to the first exclusion, Plaintiff points out that each of the three underlying actions contains explicit allegations directly against Schwartz for conversion, misappropriation, and improper commingling of client funds.  *Id*. at 10-11.  Plaintiff argues that the claims against Schwartz "arise out of" Schwartz's acts of conversion, misappropriation, and commingling of client funds, and therefore fall within the scope of the exclusion.  *Id.* at 12.  As to the second exclusion, Plaintiff contends "[i]t is of no relevance that Schwartz was ultimately sentenced to the charge of disorderly conduct" since "his sentencing is a final adjudication against Schwartz 'based upon or arising out of' a dishonest wrongful act."  *Id*. at 17-18.  Therefore, notwithstanding the conditional nature of his plea and the fact that his sentence was for disorderly conduct only, the sentence still implicates the "dishonest" and "wrongful act" language of the second exclusion.  *Id.* at 18.

---

[13]   The Court does not recite arguments already identified in Plaintiff's motion.

Plaintiff also challenges the Schwartz Defendants' argument that Schwartz's execution of the Affidavits of Confessions of Judgment did not violate a condition precedent of the Policy. Plaintiff makes two points here.  First, Plaintiff points out that the Schwartz Defendants' argument — *i.e.*, that Schwartz did not breach the Policy because his promise to pay over $100,000.00 to Persaud and Dos Ramos collectively "only constitutes a small amount of the potential liability" — is, in fact, an admission that the Policy was violated and any assumption of liability is a violation of the Policy.  Pl.'s Opp'n. & Reply at 19.  Second, Plaintiff notes that Schwartz has filed for bankruptcy in Florida, thereby showing that he cannot pay these judgments without insurance coverage, and, therefore, the judgments are not entirely separate from any payment on behalf of Plaintiff as the Schwartz Defendants argue.  *Id*.

Finally, Plaintiff contends that a stay of this action is unwarranted: "[t]here is no overlap between the claims in these actions which could potentially lead to piecemeal litigation or inconsistent decisions," because "there are no insurance issues in the Underlying Actions."  Pl.'s Opp'n. & Reply at 20-21.

## III.    STANDARD OF REVIEW ON SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The moving party bears the initial burden of establishing the absence of any genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 108 (2d Cir. 2013); *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).  To determine whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising from that evidence in

the light most favorable to the non-moving party.  *Doro v. Sheet Metal Workers' Int'l Ass'n*, 498

F.3d 152, 155 (2d Cir. 2007); *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005).

Where the movant shows a *prima facie* entitlement to summary judgment, "the burden

shifts to the nonmovant to point to record evidence creating a genuine issue of material fact."

*Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006); *Miller v. Nassau Health Care Corp.*,

No. 09 Civ. 5128, 2012 WL 2847565, at *3 (E.D.N.Y. July 11, 2012).  "[T]he nonmovant cannot

rest on allegations in the pleadings and must point to specific evidence in the record to carry its

burden on summary judgment."  *Salahuddin*, 467 F.3d at 273; *see McPherson v. N.Y.C. Dep't of*

*Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a

motion for summary judgment.").  Summary judgment is mandated if the non-moving party fails

to make a showing sufficient to establish the existence of an element essential to that party's case

and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986); *see Dobbs v. Dobbs*, No. 06 Civ. 6104, 2008 WL 3843528, at *5 (S.D.N.Y.

Aug. 14, 2008) (internal quotation marks omitted) ("The Court's goal should be to isolate and

dispose of factually unsupported claims.").

The above standard remains applicable where, as here, both parties have filed cross-

motions for summary judgment.  In such circumstances, "each party's motion must be examined

on its own merits, and in each case all reasonable inferences must be drawn against the party

whose motion is under consideration."  *Sussman v. Rabobank Int'l*, 739 F. Supp. 2d 624, 627

(S.D.N.Y. 2010) (quoting *Morales v. Quintel Entm't, Inc.,* 249 F.3d 115, 121 (2d Cir. 2001) and

citing *S.E.C. v. Lyon,* 605 F. Supp. 2d 531, 540 (S.D.N.Y. 2009)).

IV.    **D**ISCUSSION

Plaintiff argues that it properly disclaimed coverage pursuant to three provisions of the Policy, provisions which bring the claims against Schwartz in the underlying civil actions outside the scope of coverage.  The three provisions are: (1) the exclusion precluding coverage of any claim arising out of conversion, misappropriation, or improper commingling of client funds; (2) the exclusion precluding coverage of any claim resulting in any final judgment arising out of any criminal, dishonest, fraudulent, or malicious wrongful act; and (3) the condition precedent proscribing an insured from making payments, admitting liability, settling claims, or assuming any obligation without Plaintiff's prior written consent.  The Court will address the parties' arguments in the context of each provision in turn, but first reviews the legal principles governing insurance contract interpretation and coverage generally.[14]

A.    **Scope of the Duty to Defend and Indemnify:  Legal Principles**

"An insurer has two distinct duties to its insured—to indemnify and to defend. An insurance company's duty to defend under New York law is 'broader than its duty to pay.'" *Harleysville Worcester Ins. Co. v. Sharma*, 230 F. Supp. 3d 109, 114 (E.D.N.Y. 2017) (quoting *Allianz Ins. Co. v. Lerner,* 416 F.3d 109, 115 (2d Cir. 2005)).  "The duty to defend is measured against the allegations of pleadings but the duty to pay is determined by the actual basis for the insured's liability to a third person." *Harleysville Worcester Ins. Co.*, 230 F. Supp. 3d at 114 (quoting *Atlantic Cas. Ins. Co. v. Value Waterproofing, Inc.*, 918 F. Supp. 2d 243, 252 (S.D.N.Y.

---

[14]    The Court declines to recommend that this action be stayed pending resolution of the underlying actions.  As Plaintiff points out, "[t]here is no overlap between the claims in these actions which could potentially lead to piecemeal litigation or inconsistent decisions," because "there are no insurance issues in the Underlying Actions."  Pl.'s Opp'n. & Reply at 20-21.

2013) (internal quotation marks and citation omitted), *aff'd*, 548 Fed. Appx. 716, 717 (2d Cir. 2013) (summary order)).

"The obligation to defend the insured is triggered whenever there is a reasonable possibility that the allegations in the complaint will lead to coverage." *Sils Brokerage Corp. v. U.S. Underwriters Ins. Co.*, No. 10-CV-5176, 2014 WL 1276586, at *4 (E.D.N.Y. Mar. 27, 2014) (citing *Silverman Neu, LLP v. Admiral Ins. Co.,* 2013 WL 1248629, at *7 (E.D.N.Y. Mar. 28, 2013)).  The expansive duty to defend can be overcome "if the insurer can establish that there is no possible legal or factual basis that might lead to coverage." *Sils Brokerage Corp.*, 2014 WL 1276586, at *4 (citing *Abrams, Fensterman, Fensterman, Eisman, Greenberg, Formato & Einiger, LLP v. Underwriters at Lloyd's, London*, 918 F. Supp. 2d 114, 120 (E.D.N.Y. 2013)); *see U.S. Underwriters Ins. Co. v. Congregation Kollel Tisereth TZVI,* No. 99-CV-7398, 2004 WL 2191051, *4 (E.D.N.Y. Sept. 30, 2004) (stating that the insurer bears a "heavy burden of demonstrating that there is no reasonable possibility of coverage under the policy").

Plaintiff points to two exclusions and a condition precedent in arguing that there is no legal basis for coverage.  "In order to establish that the insurer can be relieved from the duty to defend based on a policy exclusion, the insurer bears the heavy burden of demonstrating that: (i) the allegations in the complaint are solely within the exclusion, (ii) the exclusion is subject to no other reasonable interpretation, and (iii) there is no basis upon which the insurer will ultimately be held obligated to indemnify the insured." *Sils Brokerage Corp.*, 2014 WL 1276586, at *4 (citing *Silverman Neu, LLP,* 2013 WL 1248629, at *7); *see Parks Real Estate Purchasing Grp. You is you is you v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006).

In reviewing the terms of an insurance policy to determine whether a duty to defend exists, the Court applies the ordinary rules of contract interpretation.  *Silverman Neu, LLP*, 933

F. Supp. 2d at 472; *see Accessories Biz, Inc. v. Linda & Jay Keane, Inc*., 533 F. Supp. 2d 381, 386 (S.D.N.Y. 2008) ("Insurance policies are contracts to which the ordinary rules of contractual interpretation apply."). "Generally, courts refer to the language of the contract to determine whether it is unambiguous, construing the words using common speech." *Sils Brokerage Corp.*, 2014 WL 1276586, at *4 (citing *Am. Automobile Ins. Co. v. Sec. Income Planners & Co., LLC,* 847 F. Supp. 2d 454, 461 (E.D.N.Y. 2012)). "Whether a contract is ambiguous, however, is a 'threshold question of law to be determined by the court.'" *Parks Real Estate Purchasing Grp.*, 472 F.3d at 42 (quoting *Duane Reade Inc. v. St. Paul Fire and Marine Ins. Co.,* 411 F.3d 384, 390 (2d Cir. 2005)). Any ambiguous terms must be construed against the insurer. *Am. Automobile Ins. Co.,* 847 F. Supp. 2d at 461.

Moreover, the Court is generally bound by the four-corners of the underlying complaint in determining the duties, if any, of an insurer under a policy. *Harleysville Worcester Ins. Co.*, 230 F. Supp. 3d at 114. "If the claims asserted therein '"rationally" fall within coverage of the policy at issue, there is an obligation to defend.'" *Id.* (quoting *Underwriters at Lloyd's, London*, 918 F. Supp. 2d at 120). The Court keeps in mind that it "should not attempt to impose the duty to defend on an insurer through a strained, implausible reading of the complaint that is linguistically conceivable but tortured and unreasonable." *First Invs. Corp. v. Liberty Mutual Ins. Co.,* 152 F.3d 162, 166 (2d Cir. 1998). However, "[i]f any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action." *Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997).

**B.    Plaintiff's Duty to Defend Under the Policy**

As an initial matter, the Court notes that, absent the claims potentially implicating one of the three Policy provisions upon which Plaintiff's disclamation is founded, each of the three

underlying actions contains claims which are covered under the Policy's general coverage provisions. *See* FMLP002932 at 1 (establishing coverage for claims "arising out of the conduct of the insured's profession as a Lawyer"). This is evident in the fact that Plaintiff initially agreed to defend Schwartz in each of the underlying actions prior to disclaiming coverage. Consequently, the Court does not need to engage in the threshold inquiry of whether, absent exclusions, the claims against Schwartz are covered – they are. *Cf. Sils Brokerage Corp.*, 2014 WL 1276586, at *5 ("It is not necessary for purposes of deciding this summary judgment motion for the Court to determine whether the claims fall within the scope of the policy since the parties have not contested this issue. However, U.S. Underwriters contends that this type of transaction is excluded from the policy."). The Court therefore proceeds to examine each of the three provisions under which Plaintiff has disclaimed coverage, beginning with the exclusion precluding coverage for "any claim arising out of conversion, misappropriation or improper commingling of client funds." FMLP002932 at 4.

### 1.    *Exclusion XI:  "any claim arising out of conversion, misappropriation or improper commingling of client funds"*

As noted, Plaintiff contends "it is undisputed that each of the Underlying Actions contain claims against Schwartz arising out of conversion, misappropriation or improper commingling of funds." Pl.'s Mem. at 15. The Schwartz Defendants argue that this exclusion should not abrogate coverage because (1) Plaintiff has a duty to defend them because each of the underlying lawsuits alleges in part claims of legal malpractice, which are covered under the Policy, and, further, (2) the allegations in the three underlying actions directed specifically at Schwartz assert negligent hiring and supervision. *See* Defs.' Mem. & Opp'n. at 10-12.

Exclusions of this kind are generally enforceable. *See Silverman Neu, LLP*, 933 F. Supp. 2d at 475 (explaining that "New York courts have a strong public policy against insuring a party

from its intentional and/or fraudulent acts, practices, or conduct") (citation omitted). Additionally, the Court finds this exclusion to be clear and unambiguous.  *See Parks Real Estate Purchasing Grp.*, 472 F.3d at 42 ("Whether a contract is ambiguous . . . is a threshold question of law to be determined by the court.") (internal quotation omitted).  "Under New York law, '[i]n the context of a policy exclusion, the phrase "arising out of" is unambiguous, and is interpreted broadly to mean "originating from, incident to, or having connection with.""'[15]  *BF Advance, LLC v. Sentinel Ins. Co., Ltd.*, No. 16-CV-5931, 2018 WL 4210209, at *11 (E.D.N.Y. Mar. 20, 2018) (quoting *Scottsdale Indem. Co. v. Beckerman*, 992 N.Y.S.2d 117, 121 (2nd Dep't 2014)). The court determines the applicability of an "arising out of" exclusion with a "but-for" test, which provides that

> if the plaintiff in an underlying action . . . alleges the existence of facts clearly falling within such an exclusion, and none of the causes of action that he or she asserts could exist but for the existence of the excluded activity or state of affairs, the insurer is under no obligation to defend the action.

*Scottsdale Indem. Co.*, 992 N.Y.S.2d at 121; *BF Advance, LLC*, 2018 WL 4210209, at *11; *U.S. Underwriters Ins. Co. v. Val-Blue Corp.*, 647 N.E.2d 1342, 1343 (1995); *Natural Organics, Inc. v. OneBeacon Am. Ins. Co.*, 959 N.Y.S.2d 204, 207-08 (2nd Dep't 2013)).

Because the exclusion here is clear and unambiguous, the Court must next determine whether the exclusion applies to any of the underlying complaints.  In doing this, the Court examines the allegations in the underlying complaints firsthand.  *See BF Advance, LLC v. Sentinel Ins. Co., Ltd.*, No. 16-CV-5931, 2018 WL 4210209, at *13 (E.D.N.Y. Mar. 20, 2018)

---

[15]  Further, the terms conversion, misappropriation, and improper commingling of funds have ascertainable definitions and are therefore unambiguous.

25

("When analyzing the Underlying Complaint, the court looks to the facts alleged—not plaintiffs' interpretation of those allegations.").

### a.    The Dos Ramos Action

The Dos Ramos Verified Complaint asserts two causes of action against Schwartz, specifically:  fraudulent inducement (fourth cause of action), Dos Ramos Verified Complaint ¶¶ 37-45, and conversion/misappropriation (seventh cause of action).  *Id*. ¶¶ 60-67.  According to Dos Ramos, Schwartz represented that funds from the Metlife mortgage loan would be used to satisfy the existing mortgage on the subject property, knowing that such representation was false and was made with the intent to induce Dos Ramos to purchase the property.  *Id.* ¶¶ 38-40.  Dos Ramos further alleges that Schwartz "took possession of the funds secured by the Metlife mortgage," *id*. ¶ 61; however, "[d]espite such possession, [Schwartz] never satisfied the Deutsche Bank mortgage" and converted the Metlife mortgage funds "with malice."  *Id*. ¶¶ 64, 67.

Under New York law, there are four elements necessary to establish a fraudulent inducement claim:  (1) a material false representation (2) made with the intent to induce a party to rely on it, which (3) the party does reasonably rely upon and which (4) results in injury to that party.  *Solutia Inc. v. FMC Corp.*, 456 F. Supp. 2d 429, 449 (S.D.N.Y. 2006); *Swersky v. Dreyer & Traub*, 643 N.Y.S.2d 33, 36 (1996).  As to the other cause of action asserted against Schwartz, the "[t]wo key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiffs [*sic*] rights."  *Pac. M. Int'l Corp. v. Raman Int'l Gems, Ltd.*, 888 F. Supp. 2d 385, 396 (S.D.N.Y. 2012) (citations and quotations omitted).

In the Court's view, based on the allegations in the Dos Ramos Verified Complaint, any damages for which Schwartz could be held liable under either of the two causes of action would require the existence of activity falling squarely within the scope of the first exclusion.  That is, "none of the causes of action [Dos Ramos asserts against Schwartz] could exist but for the existence of the excluded activity or state of affairs," *i.e.*, conversion, misappropriation, or improper commingling of client funds.  *Scottsdale Indem. Co.*, 992 N.Y.S.2d at 121.  In the context of the conversion claim, this conclusion is self-evident.  The fraudulent inducement claim is slightly more thorny to assess, but ultimately the Court is led to the same conclusion.  This assessment requires the Court to answer the following question:  is it possible that Schwartz could be found liable for fraudulent inducement without having engaged in conversion, misappropriation, or improper commingling of client funds?  The Court answers this question in the negative.  To succeed on the fraudulent inducement claim against Schwartz, Dos Ramos would need to prove, among other things, that although Schwartz took possession of the Metlife mortgage funds for the purpose of satisfying the existing mortgage, such funds were not used for this purpose.  *See* Dos Ramos Verified Complaint ¶¶ 61, 64.  Schwartz's possession and misuse of the funds in this context would constitute conversion and/or misappropriation of the funds.  *Cf. Senior Health Ins. Co. of Pennsylvania v. Beechwood Re Ltd.*, No. 18-CV-6658, 2018 WL 6378158, at *7 (S.D.N.Y. Dec. 6, 2018) ("To the extent that defendants misrepresented their present intention to misappropriate [plaintiff's] assets, they engaged in actionable fraudulent inducement.").  Therefore, conversion and/or misappropriation is a necessary element of the fraudulent inducement claim against Schwartz, and there would be no liability under the claim "but for" this conduct.

Because the existence of the excluded conduct – conversion or misappropriation – is a necessary element of both the conversion claim and the fraudulent inducement claim, the Court can only conclude that Plaintiff's otherwise broad duty to defend Schwartz in the Dos Ramos action is abrogated.  *Compare Scottsdale Ins. Co. v. United Indus. & Const. Corp.*, 137 F. Supp. 3d 167, 177 (E.D.N.Y. 2015) ("The complaints in the Underlying Actions include allegations of damage caused *both* by [excluded] as well as [covered conduct].  Thus, based on the pleadings in the Underlying Actions, it is reasonably possible that [the insured] may ultimately be found liable for damages that fall entirely outside of the [ ] Exclusion.") (emphasis in original).

### b.    The Johnson Action

The Johnson Amended Verified Complaint asserts five causes of action against Schwartz, among other defendants for:  breach of contract (first and second cause of action), Johnson Verified Complaint ¶¶ 17-26; fraudulent inducement (third cause of action), *id*. ¶¶ 27-40; breach of duty of good faith and fair dealing (fourth cause of action), *id*. ¶¶ 41-48; and conversion (sixth cause of action).  *Id*. ¶¶ 55-57.  Here, the Court need not engage in an in-depth analysis as to whether each cause of action satisfies the "but-for" test because it is clear on the face of the complaint that Schwartz's liability for at least one cause of action is not dependent upon the existence of conversion, misappropriation, or improper commingling of client funds.  The first cause of action asserts that Schwartz breached his contract to represent Johnson because Schwartz permitted Johnson to purchase the subject property while the seller defendants were in breach of the sales contract by not having obtained a certificate of occupancy.  *See id*. ¶ 22. Johnson's ability to succeed on this claim is not dependent upon the existence of conversion, misappropriation, or improper commingling.  Rather, all Johnson must prove is the existence of the contract, his performance, Schwartz's breach, and resulting damages.  *See Berman v. Sugo*

*LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) ("Under New York law, the elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages."). Schwartz's breach of the contract could conceivably be based, and allegedly is based, upon conduct completely unrelated to conversion, misappropriation, or improper commingling of funds. As a result, Plaintiff has failed to establish "that there is no possible legal or factual basis that might lead to coverage." *Sils Brokerage Corp.*, 2014 WL 1276586, at *4. Since at least one of the claims against Schwartz arises from covered events, in the absence of any other provision abrogating the duty to defend, "the insurer is required to defend the entire action." *Frontier Insulation Contractors, Inc.*, 91 N.Y.2d at 175.

### c.    The Persaud Action

The Persaud Complaint asserts three cause of action against Schwartz, among other defendants for:  negligent supervision (third cause of action), Persaud Complaint ¶¶ 60-66; fraud and conversion (fourth cause of action), *id*. ¶¶ 67-69; and legal malpractice (fifth cause of action). *Id*. ¶¶ 70-79. Like the Johnson Action, at least one of the claims against Schwartz (malpractice), and likely two (negligent supervision[16]) arises from conduct which in no way

---

[16]    Judge Bianco's decision in *Am. Auto. Ins. Co. v. Sec. Income Planners & Co.*, 847 F. Supp. 2d 454 (E.D.N.Y. 2012), which is referenced by both sides, supports this conclusion. In that case, an insurer brought suit seeking a declaratory judgment that it was not obligated to defend or indemnify in an underlying suit concerning fraudulent activity of the insured's president. The court found that an exclusion disclaiming coverage for damages in connection with any claim "[b]ased upon, [or] arising out of . . . [a]ny commingling, misappropriation or conversion of funds" did not abrogate the insurer's duty to defend. *Am. Auto. Ins. Co.*, 847 F. Supp. 2d at 461. Key to its holding, the court found that although the underlying conduct of the insured's president was intentional and fraudulent – he had pleaded guilty to a 24-count indictment and testified that he engaged in a scheme with the intent to defraud ten or more people – at least one claim against the insured entity alleged negligent supervision. Basing its decision on a review of multiple decisions of New York courts, Judge Bianco reasoned that where neither improper profit, misappropriation, nor conversion were elements of the underlying negligent supervision claim, which was based on the insured's failure to train, manage, or

implicates conversion, misappropriation, or improper commingling of client funds. Indeed, Persaud's claim for legal malpractice is at the heart of the Policy's general coverage provision. As a result, Plaintiff is not relieved of its duty to defend Schwartz in the Persaud action under the first exclusion.

2.    ***Exclusion I:   "any claim that results in any final judgment or final adjudication against any insured based upon or arising out of any criminal, dishonest, fraudulent or malicious wrongful act. This exclusion does not apply to any insured who is not so adjudged"***

Plaintiff's argument as to this exclusion is straightforward -- Schwartz pleaded guilty to criminal facilitation in the fourth degree. Because "[c]ourts throughout the country have held that guilty pleas are equivalent to convictions by trial and are, therefore, not distinct from a final adjudication on the merits," Schwartz's guilty plea implicates the exclusion, and Plaintiff has no duty to defend. Pl.'s Mem. at 17. The Schwartz Defendants argue that Schwartz's plea agreement is extrinsic to the underlying actions and should not be part of the analysis in determining Plaintiff's duty to defend. Defs.' Mem. & Opp'n. at 21-22. However, even considering the plea agreement, the Schwartz Defendants argue that "a conditional plea does not represent an admission for civil purposes and will have no collateral estoppel or preclusive effect, since an admission can only take place once a judgment of conviction is entered." *Id*. at 22. In Schwartz's case, "a judgment of conviction has entered *solely* as to the *non-criminal* charge of disorderly conduct." *Id*. at 22 (emphasis in original).

---

supervise its agents, the exclusion was likely unenforceable and the insurer had a duty to defend the action in its entirety. *Id*. at 465.

The Court finds that this exclusion does not bar coverage in either the Johnson or Persaud Actions[17] for two reasons, the first of which neither party addresses.

### a.    Question of Ambiguity

The Court's initial inquiry must be, as it was in the analysis of the first exclusion, whether the language of the exclusion is clear and unambiguous.  *See Parks Real Estate Purchasing Grp.*, 472 F.3d at 42.  "An ambiguity exists where the terms of an insurance contract could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'"  *Id.* (quoting *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000)).  The Court must resolve any ambiguity against the insurer.  *Am. Automobile Ins. Co.,* 847 F. Supp. 2d at 461.

The Court finds the language of this exclusion ambiguous to the following extent:  it is unclear to the Court whether "any claim that *results in* any final judgment or final adjudication against any insured" requires the resulting judgment to be a judgment *in the same proceeding* in which the relevant claim was asserted and therefore a judgment *resolving the very claim referenced*, or, whether "final judgment" encompasses any judgment in any related proceeding to which the claim at issue gave rise.  Neither party squarely addresses the ambiguity of the "results in" language.  Indeed, in failing to address the possibility that the scope of the exclusion is limited to claims *directly* resulting in final judgments or adjudications, *i.e.*, judgments or adjudications in the proceeding commenced by the claim at issue, both parties appear to assume

---

[17]    Because the Court finds that the first exclusion bars coverage with respect to the Dos Ramos Action, the Court limits its remaining inquiry to the Johnson and Persaud Actions.

the latter reading is the only proper reading.  The Court comes to a different conclusion – a claim that "results in" any final judgment or adjudication would seem to be a claim the disposition of which *is* the final judgment or adjudication mentioned.  The Court therefore reads the exclusion as one limited to abrogating Plaintiff's duty to indemnify an insured for adjudicated claims.  Several other courts have construed similar causation language in policy exclusions in this manner.  *See, e.g., Mt. Airy Ins. Co. v. Greenbaum*, 127 F.3d 15, 19 n.4 (1st Cir. 1997) (noting that although there was no dispute as to an insurer's duty to defend, "[i]ndemnification, of course, is another issue. Exclusion A of the policy disclaims any responsibility to pay 'any claim that results in final adjudication against any Insured that the Insured has committed any criminal, dishonest, fraudulent or malicious act, errors, omissions or personal injuries'"); *see also F.D.I.C. v. Duffy*, 47 F.3d 146, 152 (5th Cir. 1995) ("[T]his court has already affirmed the district court's finding that the verdict against [an insured for malpractice and breach of fiduciary duty] was excluded from coverage based on the exclusion in the policy for any claim 'that results in a final adjudication that any Insured has committed a dishonest, fraudulent or malicious act, error, omission or personal injury with deliberate purpose and intent.'").

If the Court's reading of the exclusion is correct, the underlying civil claims would not – at least at this point – fall within the scope of the exclusion, because none have "result[ed] in any final judgment or final adjudication" of any sort.  As a practical matter, however, the Court need not impose its reading of the exclusion on the parties as the definitive reading.  It is enough to recognize that the exclusion is susceptible to more than one reasonable interpretation, and is therefore ambiguous as a matter of law.  As such, the ambiguity must be resolved in favor of the Schwartz Defendants and against Plaintiff, and the Court is obliged to conclude that the

exclusion does not abrogate Plaintiff's duty to defend the Schwartz Defendants in the Johnson and Persaud Actions.

  **b.**  **Final Judgment or Adjudication**

  Even if the Court were to find that (1) the final judgment exclusion could reasonably be read to apply, notwithstanding the absence of any final judgment or adjudication in the Johnson or Persaud Actions, and (2) there was no issue with ambiguity in construing the exclusion as so applicable, the exclusion would not operate to bar coverage. "It is elementary that there is no judgment until sentence has been imposed." *Maiello v. Kirchner*, 98 A.D.3d 481, 483 (2nd Dep't 2012). At the time of his conditional plea of guilty to the misdemeanor of criminal facilitation in the fourth degree in January 2017, Schwartz had not been sentenced; his sentence was scheduled for approximately a year later, in January 2018. *See* Pl.'s SOMF ¶¶ 31, 35; Defs.' 56.1(b) Response ¶¶ 31, 35. When sentence was imposed, Schwartz's plea to the criminal misdemeanor was vacated, and, as a result, there was never any "final judgment or final adjudication . . . arising out of any criminal, dishonest, fraudulent or malicious wrongful act." *See Maiello*, 98 A.D.3d at 483 ("When the defendant was placed on interim probation supervision in exchange for his plea of guilty to assault in the third degree, sentencing was adjourned. As the plaintiff failed to demonstrate that a judgment had been entered against the defendant on the charge of assault in the third degree, he failed to satisfy his initial burden of demonstrating that the issue of liability was necessarily decided by reason of the defendant's plea of guilty to that charge, such that the plea should be given collateral estoppel."). The final judgment that was entered on the charge of disorderly conduct was not a final judgment arising out of conduct which was criminal, dishonest, fraudulent or malicious in nature. *See People v. Deignan*, 457 N.Y.S.2d 378, 381 (Oswego City Ct. 1982) (explaining that disorderly conduct

requires "an intent to cause public inconvenience, annoyance, or alarm or a reckless risk thereof"); *People v. McCarthy*, 67 N.Y.S.2d 560, 563 (Sup. Ct. Oneida Cnty. 1947) ("A charge of disorderly conduct . . . is defined as an 'offense' and is not a crime.").

For the foregoing reasons, the Court finds the Policy's "final judgment" exclusion does not abrogate Plaintiff's duty to defend the Schwartz Defendants in the Johnson and Persaud Actions.

> **3.    *Condition Precedent:  "No insured shall, without prior written consent of the company, make any payment, admit liability, settle any claim, assume any obligation, agree to arbitration or any similar means of resolution of any dispute, waive any rights or incur any claims expense on behalf of the company."***

Plaintiff argues that Schwartz's execution of the Affidavits of Confessions of Judgment as to the Dos Ramos and Persaud actions violates this condition precedent, because "Schwartz admitted liability" and "voluntarily assumed an obligation to make a payment to the underlying plaintiffs in a collective amount exceeding $100,000." Pl.'s Mem. at 21. The Schwartz Defendants contend that the Affidavits of Confessions of Judgment were not made on behalf of Plaintiff, and that the language of the Affidavits makes clear that "the confessions only apply to the extent that insurance does not. In this way, the confessions operate not as a settlement or an offer on behalf of the carrier, but as a safety net for Dos Ramos and Persaud in the event that they fail to secure a judgment through the underlying lawsuits." Defs.' Mem. & Opp'n. at 24.

The Court has found little legal authority to guide its inquiry on this issue beyond the authority establishing that provisions similar to the Policy's condition precedent are in fact enforceable. *See Travelers Indem. Co. v. Northrop Grumman Corp.*, 4 F. Supp. 3d 599, 611 (S.D.N.Y. 2014) ("An insurer may deny coverage where the insured assumes financial obligations without the insurer's participation or consent."), *aff'd in part*, 677 Fed. App'x 701 (2d

Cir. 2017); *U.S. Underwriter's Ins. Co. v. Ziering*, No. 06-CV-1130, 2009 WL 238562, at *8 (E.D.N.Y. Feb. 2, 2009) ("It is well-settled that '[p]rovisions such as the foregoing, which reserve to the insurer the control of litigation and settlement, have been consistently enforced. Accordingly, an insured who does not comply with the terms of his policy by preserving for his insurer the opportunity to defend or compromise, is usually not entitled to recover under his contract.'") (quoting *Diversified Mortg. Investors v. U.S. Life Title Ins. Co.,* 544 F.2d 571, 575 (2d Cir. 1976)).

Despite the dearth of authority, logic dictates that the key to determining whether the condition precedent has been violated is deciding whether the obligations incurred by Schwartz in his Affidavits of Confessions of Judgment are independent of Plaintiff's coverage obligations under the Policy in the context of the relevant civil actions.  If the obligations are independent of one another, it would not be reasonable to conclude that the confessions of judgment violated the condition precedent.  If, on the other hand, the obligations constitute compensation for the same underlying conduct, it would be reasonable to conclude such obligations were contemplated by the Policy, and the assumption of such obligation without Plaintiff's written consent violates the condition as a result.

Operating within this framework, the Court concludes that Schwartz's execution of the Affidavits of Confessions of Judgment did indeed violate the Policy's condition precedent.  The Court reaches this conclusion based on two provisions of the Affidavits themselves which together show that Schwartz's obligations under the Affidavits and Plaintiff's potential coverage obligations under the Policy are coterminous.  First, according to the Affidavits, $43,000.00 and $86,061.00 represent Schwartz's civil liability to Dos Ramos and Persaud, respectively, "in connection with conduct which gave rise to the charges" of criminal possession of stolen

property and grand larceny "being brought against him by the Queens County District Attorney's Office under Queens County Indictment Number 508/2014." Affidavits ¶ (4). It is undisputed that the civil actions arise from the same set of facts and circumstances upon which the District Attorney's criminal prosecution was based. Second, the Affidavits provide that "[t]he collection of judgment against [Schwartz] . . . shall be offset by any payments from [his] insurance policy for this loss and also by any payments from Helene Stetch. Collection of this judgment shall be made after a final determination is made by the insurance carrier as to coverage under the pending civil suit." *Id*. ¶ (6). The Schwartz Defendants point to this provision of the Affidavits as support for their contention that "the confessions of judgment exists [*sic*] entirely separate from any payment on behalf of the Insurer." Defs.' Mem. & Opp'n. at 24. While this is correct, the Court sees this fact as indicative of the coextensive nature of Schwartz's obligations under the Affidavits and Plaintiff's obligations under the Policy, namely, that Schwartz's obligations under the Affidavits constitute a portion of liability arising from the same conduct and circumstances against which Plaintiff would be otherwise obligated to defend. Indeed, as Schwartz points out, to whatever extent Dos Ramos and Persaud are made whole by way of Schwartz's payments under the Affidavits, their damages would be offset in the underlying civil actions. The Court therefore concludes that notwithstanding the necessity to execute the Affidavits of Confessions of Judgment in order to resolve his criminal prosecution, Schwartz breached the Policy's condition precedent by assuming obligations in the Affidavits as to Dos Ramos and Persaud and did so without Plaintiff's consent. As a result, the Court finds that Plaintiff is relieved of its obligation to defend Schwartz in the Dos Ramos and Persaud Actions.[18]

---

[18]    As a practical matter, because the Court already determined that Plaintiff's duty to defend in the Dos Ramos Action was abrogated by application of the first exclusion – covering

### 4.    *Plaintiff's Duty to Defend Under the Policy:  Summary*

Based on the foregoing analysis, the Court concludes that Plaintiff is relieved of its duty under the Policy to defend the Schwartz Defendants in the Dos Ramos and Persaud Actions. Specifically, the exclusion pertaining to "conversion, misappropriation, or improper commingling of client funds" operates to bar coverage with respect to the Dos Ramos Action, and the condition precedent pertaining to assumption of obligations without consent operates to bar coverage with respect to the Persaud (and Dos Ramos) Action.  As a result, the Court respectfully recommends to Judge Feuerstein that Plaintiff's motion for summary judgment be GRANTED as to coverage in these two actions, and that the Schwartz Defendants' motion for summary judgment be DENIED as to coverage in these actions.  The Court further respectfully recommends to Judge Feuerstein that Plaintiff's motion be DENIED to the extent that its duty to defend the Schwartz Defendants in the Johnson Action remains in effect, and that the Schwartz Defendants' motion be GRANTED to this extent for the same reason.

### C.    **Plaintiff's Duty to Indemnify Under the Policy**

"It is premature for the Court to determine whether or not [Plaintiff] has a duty to indemnify [the Schwartz Defendants] because the issue of indemnification necessarily depends on facts that will be decided in the underlying state action." *Am. Auto. Ins. Co,* 847 F. Supp. 2d at 465; *see Westport Ins. Corp. v. Hamilton Wharton Grp., Inc.*, No. 10 CIV. 2188, 2011 WL 724737, at *4 (S.D.N.Y. Feb. 23, 2011), *aff'd*, 483 Fed. App'x 599 (2d Cir. 2012) (explaining that an insurer's "duty to indemnify [insured] necessarily depends on the resolution of one or more issues to be determined in the State Actions and is, therefore premature"); *Specialty Nat'l*

---

claims arising out of conversion, misappropriation, or improper commingling of client funds – only the Persaud action is affected by this determination.

*Ins. Co. v. English Bros. Funeral Home,* 606 F.Supp.2d 466, 472 (S.D.N.Y.2009) ("An action to declare the insurer's duty to indemnify is premature and does not lie where the complaint in the underlying action alleges several grounds of liability, some of which invoke the coverage of the policy, and where the issues of indemnification and coverage hinge on facts which will necessarily be decided in that underlying action.") (quoting *Hout v. Coffman,* 126 A.D.2d 973, 973 (N.Y.App.Div.1987)).

Because the underlying state actions remain unresolved, to the extent both motions for summary judgment seek a declaratory judgment with respect to Plaintiff's duty to indemnify, the Court respectfully recommends that the motions be DENIED as premature.

### D.    Attorneys' Fees and Costs

"Under New York law, 'an insured who prevails in an action brought by an insurance company seeking a declaratory judgment that it has no duty to defend or indemnify the insured may recover attorneys' fees.'"  *Am. Auto. Ins. Co,* 847 F. Supp. 2d at 465 (quoting *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC,* 3 N.Y.3d 592, 598 (2004)); *see Mighty Midgets, Inc. v. Centennial Ins. Co.,* 47 N.Y.2d 12, 21 (1979).  "Where the expenses incurred by [the insured] in defending against the declaratory judgment action arose as a direct consequence of [the insurer's] unsuccessful attempt to free itself of its policy obligations, [the insured] is entitled to recover those expenses from the insurer." *U.S. Underwriters Ins. Co.,* 3 N.Y.3d at 598 (quotation marks omitted); *Westport Ins. Corp.*, No. 2011 WL 724737, at *5 ("[Insurer] has cast [insured] in a 'defensive position' in this declaratory judgment action which seeks to free [insurer] from its policy obligation to defend and indemnify [insured] in the State Actions.  Since the Court has determined that [insurer] does have a duty to defend and may have a duty to

indemnify (depending upon the resolution of fact issues in the State Actions), [insured] ha[s] prevailed on the merits for the purpose of obtaining legal fees.").

Since Plaintiff has unsuccessfully attempted to free itself of its duty to defend with respect to at least one underlying action, the Court finds it reasonable to recommend that Plaintiff reimburse the Schwartz Defendants for at least some of the attorneys' fees and costs expended in defending this action. The Johnson Action, in which the Court has determined that Plaintiff's duty to defend remains in effect, is one of three underlying actions over which the parties have litigated in this action. Therefore, the Court respectfully recommends to Judge Feuerstein that Plaintiff reimburse the Schwartz Defendants for one third of the attorneys' fees and costs expended in defending the instant action to date.

### E.    Other Reimbursements

Plaintiff also seeks reimbursement from the Schwartz Defendants for $9,369.54 that it has spent defending Schwartz in the underling actions, and payment of $15,000 for three unpaid deductible payments. *See* Pl.'s Mem. at 23. Because the Court has determined that no duty to defend the Dos Ramos and Persaud Actions exists, the Court respectfully recommends to Judge Feuerstein that the Schwartz Defendants be ordered to reimburse Plaintiff for those costs associated with their defense in these two actions. *Max Specialty Ins. Co. v. WSG Inv'rs, LLC*, No. 09-CV-5237, 2012 WL 3150579, at *9 (E.D.N.Y. Apr. 20, 2012), *report and recommendation adopted*, No. 09-CV-05237, 2012 WL 3150577 (E.D.N.Y. Aug. 2, 2012) (finding that where no duty to defend existed under a policy, the insurer was "entitled to recoup all legal fees expended thus far defending" the insured). The Court defers to Judge Feuerstein as to whether the Schwartz Defendants should be ordered to remit payment of the $15,000.00 of allegedly unpaid deductibles under the Policy.

## V.   CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Feuerstein that the parties' motions for summary judgment be GRANTED, in part, and DENIED, in part, to the following extent:  Plaintiff's duty to defend the Schwartz Defendants in the Dos Ramos and Persaud Actions is abrogated, and Plaintiff's duty to defend the Schwartz Defendants in the Johnson Action remains in effect.  The Court recommends that summary judgment as to Plaintiff's duty to indemnify be DENIED at this time as premature.  The Court further recommends that (1) Plaintiff be ordered to reimburse the Schwartz Defendants for one third of their attorneys' fees and costs expended in defending the instant action to date, and (2) the Schwartz Defendants be ordered to reimburse Plaintiff for all costs associated with their defense in the Dos Ramos and Persaud Actions.

## VI.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Sandra J. Feuerstein and to the Chambers of the undersigned.  Any requests for an extension of time for filing objections must be directed to Judge Feuerstein prior to the expiration of the fourteen (14) day period for filing objections**.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
        March 1, 2019


/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge